**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

| | |
|---|---|
| Nathan C. Braun, | Case No. 26-cv-1037 (MJD/SGE) |
| Petitioner, | |
| v. | **REPORT AND RECOMMENDATION** |
| Minnesota Department of Corrections, Commissioner of Corrections, Warden of MCF–Rush City, MNDOC Hearings and Release Unit, | |
| Respondents. | |

This matter is before the Court on Petitioner Nathan C. Braun's "Petition for Expedited Habeas Corpus," Dkt.. 1 ("Petition"), Application to Proceed *In Forma Pauperis*, Dkt. 3 ("IFP Application"), and Motion for Preliminary Injunction, Dkt. 4. For the following reasons, the Court recommends denying the Petition, dismissing this action, and denying the IFP Application and Motion for Preliminary Injunction as moot.

I.      **Background**

Braun is incarcerated at the Minnesota Correctional Facility in Rush City, Minnesota ("MCF–Rush City"). *See* Pet. 4. In July 2017, a Benton County jury found Braun guilty of third-degree criminal sexual conduct. *See* Verdict Form 1, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. July 31, 2017).[1] Judge Robert Raupp later sentenced him to

---

[1] The Court may take judicial notice of public court records. *See, e.g., Stutzka v. McCarville*, 420 F.3d 757, 760 n.2 (8th Cir. 2005) (citing *United States v. Eagleboy*, 200

91 months of imprisonment and 10 years of "[c]onditional release." *See* Order and Warrant of Commitment 1, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct. Sept. 6, 2017). Braun appealed his conviction, but the Minnesota Court of Appeals affirmed it. *See State v. Braun*, No. A17-1889, 2018 WL 4201208, at *1 (Minn. Ct. App. Sept. 4, 2018). Since then, he has unsuccessfully challenged the conviction on many occasions. *See generally* Register of Actions, *State v. Braun*, No. 05-CR-16-1323 (Minn. Dist. Ct.); *Braun v. State*, No. A20-1407, 2021 WL 3136497, at *1 (Minn. Ct. App. July 19, 2021) (comprising Minnesota Court of Appeals affirming trial court denial of Braun's "third postconviction petition for relief" concerning No. 05-CR-16-1323).

As the Court understands it, Braun completed his initial prison term and began his conditional-release term. According to the Petition, authorities "arrested" Braun on December 16, 2025, for unspecified "allegations of violations of [his] release." Pet. 1. Braun alleges that four days later, he was "served with a packet of documents outlining the allegations of [his] alleged violations." *Id.* On December 29, 2025, Braun appeared before an officer with the Hearings and Release Unit of the Minnesota Department of Corrections ("MDOC"). *See id.* Braun contends the officer stated "she would not follow the law" and treated conditional release as identical to supervised release. *Id.* He further contends that the officer rejected his argument that he was never informed of his specific release conditions. *See id.* The hearing was eventually continued.

---

F.3d 1137, 1140 (8th Cir. 1999)); *Ismail v. Clay Cnty. Jail Corr. Officers*, No. 25-CV-3286 (ECT/ECW), 2025 WL 4059770, at *1 n.2 (D. Minn. Dec. 18, 2025) (citing *Stutzka*), *report and recommendation adopted*, 2026 WL 129236 (D. Minn. Jan. 16, 2026).

Braun alleges that on December 30, 2025, authorities transferred him to MCF–Rush City to await his hearing. *See id.* at 2. He claims that within an hour of entering general population, he was "threatened with physical violence and hospitalization." *Id.* This allegedly occurred despite the MDOC knowing of threats to Braun from the "Native Mob" gang. *Id.* After notifying staff, Braun was placed in administrative segregation for "refusing placement." *Id.* Braun further alleges that staff "fail[ed] to secure his personal property." *Id.* He claims an inmate and "other gang members" took his "legal documents" and harassed his family. *Id.* Finally, Braun notes that "[d]espite [the] credible risk to his safety" justifying his refusal of his original placement, MDOC authorities gave him 15 days of disciplinary segregation based on the refusal. *Id.*

Braun recounts that in December 2024, about a year before the events giving rise to the Petition, he asked to modify his "Conditions of Release." *Id.* at 2–3. He allegedly argued many conditions were "overbroad" or inapplicable. *Id.* He claims he never received a response, despite MDOC policy. *See id.* at 3.

Braun seeks to be "immediately released from custody," or, alternatively, "to be transferred to the county [he] was originally held in." *Id.* He also asks that his "Risk level assignment[2] be changed" because of an "[MDOC]-ordered polygraph." *Id.* During that test, the examiner reportedly found Petitioner truthful in an "attestation of innocence." *Id.*

---

[2] In Minnesota, the risk-level assessment process for (as relevant here) sex offenders is governed by state law (Minn. Stat. § 244.052) and MDOC Policy 205.220. Before an offender's release from prison, a committee evaluates the offender's risk of recidivism using a standardized risk-assessment scale. The assigned risk level affects the scope of community notification required when authorities release the offender.

Braun does not list specific grounds for his Petition.  Since the Court must construe

*pro se* filings liberally,[3] it assumes that the Petition raises these seven grounds:

1. Braun's hearing officer violated his due-process rights in December 2025 by ignoring legal standards for conditional-release proceedings.

2. Braun received no proper notice of his conditional-release conditions.

3. MCF–Rush City officials failed to protect Braun from "Native Mob" gang threats.

4. Braun received 15 days of disciplinary segregation for "refusing placement," despite credible threats to his safety.

5. Inmates stole Braun's "legal documents" and harassed his family. (Braun also suggests here that officials failed to investigate or discipline the responsible individuals.)

6. MDOC officials failed to respond to Braun's December 2024 request to modify his release conditions.

7. Braun's MDOC risk-level classification should change because he passed a polygraph examination.

## II.    Analysis

### a.    Statutory vehicle: 28 U.S.C. § 2254 vs. 28 U.S.C. § 2241

Braun titles the Petition a "Petition for Expedited Habeas Corpus" without citing a

specific statute.  Since Braun proceeds *pro se*, the Court must identify the proper statutory

vehicle.  Two possibilities exist: 28 U.S.C. § 2254, for persons "in custody pursuant to the

judgment of a State court," and 28 U.S.C. § 2241, the general habeas statute for persons

"in custody in violation of the Constitution or laws or treaties of the United States."  *See*

---

[3] *See, e.g.*, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)); *Lamar v. Payne*, 111 F.4th 902, 907 n.2 (8th Cir. 2024) (citing *Stone v. Harry*, 364 F.3d 912, 914 (8th Cir. 2004)).

28 U.S.C. §§ 2241(c)(3), 2254(a).  This distinction matters because § 2254 imposes proce-dural restrictions that § 2241 does not.

In the Eighth Circuit, § 2254 is the exclusive federal vehicle for habeas relief when a person is "in custody pursuant to the judgment of a State court."  This applies whether the petitioner challenges the state conviction or the sentence's execution.  *See Crouch v. Norris*, 251 F.3d 720, 723 (8th Cir. 2001) (holding § 2254 sole habeas remedy for state prisoners challenging execution of sentences, in case where prisoner was on parole); *Collins v. Hennepin Cnty. Cts.*, No. 25-CV-2885 (PAM/DJF), 2025 WL 2469262, at *1 (D. Minn. July 23, 2025) (citing *Crouch*), *report and recommendation adopted*, 2025 WL 2466652 (D. Minn. Aug. 27, 2025).

The Court thus construes the Petition as arising under § 2254 (to the extent that it challenges Braun's confinement).[4]  Accordingly, the procedural requirements of AEDPA,[5] including the § 2254(b)(1)(A) exhaustion requirement, apply.

**b.      Conditions-of-confinement claims**

Some of Braun's claims challenge the conditions of his confinement rather than its legality.  "[W]hen a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of

---

[4] As discussed below, some of Braun's other claims do not challenge the fact or duration of his confinement at all, so must instead be pursued, if at all, under 42 U.S.C. § 1983.

[5] Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 110 Stat. 1214 (codified as amended in scattered sections of 8, 18, 22, 28, and 42 U.S.C.).

5

habeas corpus." *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973); *see also, e.g.*, *Spencer v. Haynes*, 774 F.3d 467, 469 (8th Cir. 2014) (quoting *Preiser*-reliant caselaw). Conversely, claims about the conditions of confinement do not attack the validity of the confinement and fall outside the "core" of habeas. *Nelson v. Campbell*, 541 U.S. 637, 643 (2004); *see also, e.g.*, *Spencer*, 774 F.3d at 469 (quoting *Kruger v. Erickson*, 77 F.3d 1071, 1073 (8th Cir. 1996) (per curiam)).

Braun's claims span both categories. Specifically, Grounds 3, 4, and 5 concern the conditions of Braun's confinement and are not cognizable in habeas. The Court therefore recommends denying the Petition as to Grounds 3, 4, and 5. These denials are without prejudice to Braun pursuing these claims in a separate civil-rights action.

### c.      Ground 1

Ground 1 alleges that the hearing officer at Braun's December 2025 revocation hearing violated his due-process rights by ignoring legal standards. This claim is generally cognizable in a § 2254 proceeding. Someone reincarcerated after a revocation is in custody under the original state-court judgment and may challenge the revocation's constitutionality through habeas. And the Supreme Court has long held that those on parole or conditional release deserve minimum due-process protections before revocation. *See, e.g.*, *Morrissey v. Brewer*, 408 U.S. 471, 489–94 (1972); *Harju v. Fabian*, No. 07-CV-2094 (ADM/SRN), 2008 WL 698484, at *2–4 (D. Minn. Mar. 13, 2008) (addressing such a claim in § 2254 proceeding).

But a court can grant a writ of habeas corpus under § 2254 only if "the applicant has exhausted the remedies available in the courts of the state." 28 U.S.C. § 2254(b)(1)(A).

6

This "exhaustion" requirement rests on principles of comity and federalism that promote cooperation and mutual respect between federal and state courts. The exhaustion doctrine ensures state courts have a "full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *see also, e.g.*, *Brende v. Young*, 907 F.3d 1080, 1084 (8th Cir. 2018) (citing *O'Sullivan*). To provide that opportunity, a prisoner must "fairly present" each federal claim to every appropriate state court, including the state's highest court. *Baldwin v. Reese*, 541 U.S. 27, 29 (2004) (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995) (per curiam)); *see also, e.g.*, *Deck v. Jennings*, 978 F.3d 578, 581 (8th Cir. 2020) (making similar point (quoting *Morris v. Norris*, 83 F.3d 268, 270 (8th Cir. 1996)). In Minnesota, a § 2254 applicant must fairly present each claim to the Minnesota Supreme Court before seeking federal relief. *See, e.g.*, *Turnage v. Fabian*, 606 F.3d 933, 936 (8th Cir. 2010); *Bell v. Stenseth*, No. 23-CV-3881 (JWB/ECW), 2024 WL 4839826, at *4 (D. Minn. July 29, 2024) (citing *Fraction v. Minnesota*, 678 F. Supp. 2d 908, 916 (D. Minn. 2008)), *R&R adopted*, 2024 WL 4839157 (D. Minn. Nov. 20, 2024).

Here the Petition suggests that as of the date that Braun signed the Petition (January 8, 2026), the revocation proceeding had not been completed. Unsurprisingly, then, Braun has not alleged, nor does the Petition indicate, that Braun has pursued any form of state judicial review of the revocation proceedings. He therefore has not exhausted state-court remedies with respect to this claim. The Court therefore recommends denying Ground 1 of the Petition.

### d.      Ground 2

Like Ground 1, Ground 2 is cognizable in a § 2254 proceeding.  Braun argues that the MDOC failed to give him proper notice of the conditions of his conditional release and that unknown conditions formed the basis for his revocation.  If Braun were not properly notified of the conditions he allegedly violated, that failure could undermine the revocation's constitutional validity.

On the Court's reading, Ground 2 asserts a due-process claim similar to Ground 1.  But the same exhaustion problem that defeats Ground 1 applies to Ground 2.  Before presenting this claim in a federal § 2254 proceeding, Braun must exhaust his state-court remedies.  The Court therefore recommends denying Ground 2 of the Petition based on Braun's failure to exhaust state-court remedies.

### e.      Ground 6

Ground 6 contends that in December 2024, Braun submitted a written request to modify the conditions of his release but did not receive the response required by MDOC policy.  As a threshold matter, this is not a conditions-of-confinement claim, but a request to modify the conditions of conditional release also does not challenge the fact or duration of confinement.  Even if successful, it would at most revise supervision conditions, not secure release from custody.  This claim is therefore not cognizable in habeas.  *See Preiser*, 411 U.S. at 498–500; *Kruger*, 77 F.3d at 1073.[6]

---

[6] Playing devil's advocate, one could argue that proper handling of Braun's request might have led to its approval and that the resulting change in conditions could have affected his revocation proceedings.  But the Petition does not make that argument: it provides no detail

Furthermore, Braun alleges here only a failure to follow MDOC policy. He does not identify any federal or state law that the MDOC violated by failing to respond. But a violation of agency policy, by itself, does not state a federal constitutional claim. *See, e.g.*, *Phillips v. Norris*, 320 F.3d 844, 847 (8th Cir. 2003) (citing *Kennedy v. Blankenship*, 100 F.3d 640, 643 (8th Cir. 1996)). If Braun intends to assert a due-process claim based on the MDOC's failure to act on his request, he would need to allege a relevant liberty interest implicated by that request. Braun provides no such detail and therefore has not shown that any relevant liberty interest exists.

Finally, even if Ground 6 were cognizable in a § 2254 proceeding, the Petition does not show that Braun has taken any steps to exhaust his state-court remedies, much less that full exhaustion has occurred. The Court therefore recommends denying Ground 6.

### f.    Ground 7

Finally, Ground 7 asks the Court to order that Braun's risk-level assessment be changed based on alleged polygraph results. This ground has several problems. First, a risk-level assessment affects community-notification requirements when a prisoner is released. *See* note 2 above. It does not bear on the fact or duration of confinement, so challenges to the assessment are not cognizable in habeas. And even if they were, the Petition again provides no indication that Braun has begun exhausting state-court remedies, much less completed that process. The Court therefore recommends denying Ground 7.

---

about the modifications Braun sought. The Court therefore need not, and does not, opine on whether some hypothetical scenario might present a cognizable § 2254 claim.

### g.      Summary and Certificate of Appealability

Based on the discussion above, the Court recommends denying all grounds in the Petition. The Court therefore recommends denying the Petition and dismissing this action. Given that recommendation, the Court also recommends denying the IFP Application and Motion for Preliminary Injunction.

Because the Court recommends dismissing the entire Petition, it must address whether to issue a certificate of appealability ("COA"). Under 28 U.S.C. § 2253(c)(2), a COA may issue only if a petitioner has made "a substantial showing of the denial of a constitutional right." Where a petition is dismissed on procedural grounds, the petitioner must demonstrate both "that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right" and "that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

With respect to Grounds 1 and 2, which are dismissed primarily for failure to exhaust state remedies, the Court concludes that jurists of reason would not find the exhaustion ruling debatable. For Grounds 3, 4, and 5, which are dismissed as conditions-of-confinement claims not cognizable in habeas, the Court concludes that no reasonable jurist would debate that these claims fall outside the scope of § 2254. Finally, for Grounds 6 and 7, which are dismissed primarily because they do not challenge the fact or duration of Braun's confinement, the Court likewise concludes that no reasonable jurist would find this determination debatable.

The Court therefore recommends that no COA issue.

10

## RECOMMENDATION

Based on the foregoing, and on all of the files, records, and proceedings herein, **IT**

**IS HEREBY RECOMMENDED** that:

1.  Petitioner Nathan C. Braun's Petition for Writ of Habeas Corpus, Dkt. 1, be **DENIED** and this action be **DISMISSED**.

2.  Braun's Application to Proceed *In Forma Pauperis*, Dkt. 3, be **DE-NIED** as moot.

3.  Braun's Motion for Preliminary Injunction, Dkt. 4, be **DENIED** as moot.

4.  No certificate of appealability issue.


Dated: March 3, 2026                     *s/Shannon G. Elkins*
                                         SHANNON G. ELKINS
                                         United States Magistrate Judge


## NOTICE

**Filing Objections:**  The Report and Recommendation component of this Order and Report and Recommendation is not an order or judgment of the District Court and is therefore not appealable directly to the Eighth Circuit Court of Appeals.

Under Local Rule 72.2(b)(1), "a party may file and serve specific written objections to a magistrate judge's proposed finding and recommendations within 14 days after being served a copy" of the Report and Recommendation.  A party may respond to those objections within 14 days after being served a copy of the objections. *See* Local Rule 72.2(b)(2). All objections and responses must comply with the word or line limits set forth in Local Rule 72.2(c).